J. C. Else Coal Co., an Illinois Corporation, Plaintiff-Appellant, v. Miller and Banker, an Illinois Corporation, Catherine Ryan, Martha J. Dyck, Executor of the Estate of Maude T. Miller, Deceased, Martha J. Dyck, Franz W. Dyck and the County of Cook (of the State of Illinois), Defendants-Appellees.

Gen. No. 48,904.

First District, Third Division.

January 23, 1964.

Edward B. Lucius and Horace A. Young, both of Chicago (Edward G. Lucius, of counsel), for appellant.

Lyle & Havey, of Chicago (Edward T. Havey, of counsel), for appellees, Miller and Banker and Catherine Ryan. LeMoine D. Stitt, Jr., of Chicago, for appellees, Dyck. Daniel P. Ward, State's Attorney, of Chicago (Thomas A. Hett and Ronald Butler, Assistant State's Attorneys, of counsel), for appellee, County of Cook.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This suit involves multiple causes, defendants and orders. Plaintiff, J. C. Else Coal Company, was in need of a place in which to conduct its coal business. Miller and Banker, defendant, which was also in the coal business, occupied premises at 6543 Wentworth Avenue, Chicago, Illinois, under a lease which prohibited subleasing without the written consent of the lessors. It entered into a contract with plaintiff, whereby plaintiff was given the right to operate its business on the same property. The fee owners, with Miller and Banker joining, sold the property to the

County of Cook and divided the proceeds. The county took possession and ousted plaintiff. Plaintiff claims that it is entitled to a portion of the proceeds derived from the sale, seeks to impose a constructive trust on such proceeds for the value of its interest, and seeks to recover from the county for the alleged unlawful ouster.

On motions to dismiss, to strike and for summary decree, the chancellor dismissed the complaint as an equity proceeding, but sustained it as an action for damages against Miller and Banker and reassigned the case to a common-law court for trial thereon. The chancellor also included a proper provision as required by sec 50(2). (Ill Rev Stats, c 110, § 50(2) (1963).) From this order plaintiff has appealed. The issues are complicated and will be better understood following a more complete statement of the facts as derived from the pleadings.

Miller and Banker leased the property on July 1, 1956 from Maude T. Miller (since deceased and executor substituted) and Martha J. Dyck, whom we will hereinafter refer to as the "fee owners," including in that term Franz W. Dyck, whose only interest appears to be as the husband of Martha J. Dyck. The lease was for a period of five years ending June 30, 1961, with the right to extend the term for an additional five years, provided lessee gave written notice not less than three months prior to the expiration date, that is, before March 30, 1961. The lease prohibited the assigning or subleasing of the premises without the *written* consent of the owners.

On October 20, 1958, Miller and Banker entered into a written agreement with plaintiff. This agreement recited that the property on which Else Coal Co. was then conducting its business had been condemned by the state for a highway; that it needed a location from which to continue its business; that Miller and Banker

had a coal yard under lease for a term of five years, expiring June 30, 1961, with the privilege of extension for another five years and was desirous of having Else Coal Co. buy from it all the coal it would need in the conduct of its business and operate out of the Miller and Banker yard until June 30, 1966, and as the Else Coal Co. was desirous of conducting its business from the Miller and Banker yard, it was agreed that Miller and Banker would in apt time prior to June 30, 1961, serve due notice to extend its lease for the term of five years. Other provisions required Miller and Banker to sell and Else Coal Co. to purchase all of the Else Coal Co.'s coal requirements at prices fixed in the agreement. Miller and Banker agreed that during the entire period it would pay the monthly rental due under its lease and under the five-year extension thereof. Nothing is said in the agreement about the consent of the owners to the arrangement. The *complaint*, however, alleges that the agreement was made with the owners' consent. It does not recite that this consent was in writing, as required under the terms of the lease if the arrangement be considered a sublease. The agreement appears designed to avoid designation as a sublease.

On or about June 7, 1960, the Board of Commissioners of Cook County by resolution authorized the Superintendent of Highways to negotiate for the purchase of the property. The negotiations were conducted with Miller and Banker through Catherine Ryan, its president, and with the owners of the fee. Thereupon an agreement was entered into between Miller and Banker, Catherine Ryan and others as heirs-at-law of James M. Ryan, deceased, and Martha J. Dyck and Franz W. Dyck, as the husband of Martha J. Dyck. It recited that the county was about to make an offer of approximately $218,000 for the property, but had indicated that no such offer would be forth-

coming without an agreement being reached "between the parties hereto" (being those parties hereinbefore mentioned) as to the disposition of the proceeds. It then provided that out of the sum of $218,000, $90,000 would be paid to the fee owners and the balance of $128,000 to Miller and Banker. The disparity between the amount paid to the owners and that paid to Miller and Banker is explained by the fact that the latter was entitled under its lease to remove valuable buildings and improvements. The agreement then recited that it was contingent upon the ability of the owners to convey a good and merchantable title, subject only to the interest of Miller and Banker, Inc., as lessee. The sale was completed and the money was paid as agreed.

On January 6, 1961 notification of the sale was given to plaintiff by Miller and Banker and plaintiff *was further notified that it would be required to quit the premises not later than March 15, 1961.* Plaintiff remained in possession until May 5, 1961, when the defendant County of Cook entered the premises, demolished the coal yard rail spur and forced the cessation of plaintiff's business. At no time during the pendency of the negotiations for the sale of the property was plaintiff informed of the pending sale nor, so far as appears from the record, was the county informed of plaintiff's interest. No action was taken by plaintiff following receipt of notice and before being ousted by the county. Miller and Banker never exercised its option to extend its lease.

The amended complaint consisted of three counts. The first count is directed against all the defendants. In addition to the facts hereinbefore stated, it alleged that the owners were informed of the occupancy agreement; that they consented thereto; that plaintiff entered into "joint possession and occupancy" on May 1, 1959, caused its name to be painted conspicuously

on certain fences, buildings, office and equipment, and used the same until May 5, 1961; that the owners had actual knowledge that plaintiff was an "occupant"; that they neglected to inform plaintiff of the negotiations, sale, and receipt of proceeds, but fraudulently concealed this from plaintiff for the purpose of depriving it of its share thereof; that plaintiff continued its operations on the premises until May 5, 1961, when the County of Cook entered the premises and forced the cessation of plaintiff's business; that plaintiff thereupon closed its doors, sold its business and fixtures at distress prices, and thereby incurred substantial monetary loss. The prayer seeks disclosure as to the facts with respect to the sale and distribution of the funds, the determination in an accounting of the fair share of plaintiff therein, an injunction, and other incidental matters.

Count II is against the County of Cook. It avers that the county was charged with knowledge of plaintiff's interest by reason of its possession, and that the plaintiff is entitled to compensation for the county's taking of the property.

Count III is directed against Catherine Ryan, charging that she received a portion of Miller and Banker's $128,000 which she concealed from the plaintiff and that it is entitled to an accounting from her.

We will consider the first count as it applies to both the owners and to Miller and Banker.

To support its theory that the constructive trust doctrine is applicable to the facts, plaintiff quotes extensively from the broad language used by legal writers, in encyclopedias and texts, and by the courts in describing constructive trusts. It leads with a sweeping statement from 54 Am Jur, sec 218, pp 167–68:

> "A constructive trust . . . is [one] . . . which arises . . . against one, who by fraud, . . . by

duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."

But following that statement there is a considerable restriction of its broad application (p 169):

"However, a constructive trust does not arise on every moral wrong in acquiring or holding property or on every abuse of confidence in business or other affairs; ordinarily such a trust arises and will be declarded only on wrongful acquisitions or retentions of property of which equity, in accordance with its fundamental principles and the traditional exercise of its jurisdiction or in accordance with statutory provision, takes cognizance."

Plaintiff quotes extensively from 4 Scott on Trusts, 2nd ed (1956) sec 462.2, at p 3106:

"A constructive trust, as we have seen, is imposed in order to prevent unjust enrichment. This unjust enrichment may arise out of the wrongful acquisition of the title to property. . . . A constructive trust may arise, however, even though the acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it."

Then follows the statement that a constructive trust is frequently imposed as a remedy for fraud, and the further statement that there are numerous cases where it is imposed in the absence of fraud as, for example,

481

in the case of mistake or in the case of a profit made by a fiduciary.

In Nelson v. Woodworth, 109 NW2d 861 (Mich, 1961) the lead case cited by plaintiff, the court said, at p 864:

> " 'Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld.' "

But in that case a testatrix had certain funds which her executor had put into a fund of his own. It was these particular funds to which the doctrine of constructive trust was applied. The facts of the case did not warrant the broad language used by the court.

In Cohon v. Oscar L. Paris Co., 17 Ill App2d 21, 149 NE2d 472, our own court contributed a broad definition of unjust enrichment and constructive fraud. However, the facts were that the defendant had received money from a number of customers for the specific purpose of paying the sales tax on certain goods purchased. Instead of applying the money to that purpose, the seller contested the validity of the sales tax law as applied to its sales. In order to do so, the funds it had received from purchasers were sequestered. The doctrine was thus applied to specific funds derived from the plaintiffs. It was not a general creditor relationship or a case of breach of contract.

In Board of Trustees v. Village of Glen Ellyn, 337 Ill App 183, 85 NE2d 473, the court also used general language of the same tenor as in the preceding cases, but the facts there were that the village was a collector of fines and licenses which it was bound under the Police Pension Fund Act to set apart for that fund. Instead of so doing, the village diverted the funds to another purpose. There was, as in the Cohon case, a claim to a particular fund.

There is a line of authorities which does not accept the broad language plaintiff relies upon, but holds that there must be an element of fraud or a fiduciary relationship in which the dominant party took advantage of the other. Compton v. Compton, 414 Ill 149, 111 NE2d 109; Kapraun v. Kapraun, 12 Ill2d 348, 146 NE2d 7; Carroll v. Caldwell, 12 Ill2d 487, 147 NE2d 69; People ex rel. Nelson v. Central Mfg. Dist. Bk., 306 Ill App 15, 28 NE2d 154.

The true import of the generalizations used in the discussion of this subject is revealed by a study of what is said in Restatement (1937), under the title "Restitution." Plaintiff cites sec 160, at pp 640–41, as follows:

> "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

Under the title, "Unjust Enrichment," at p 12 in the same volume, it is said:

> "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."

Under the heading, "Comments," it is said:

> "(a) A. A person is enriched if he has received a benefit. (See Comment (b).) A person is unjustly enriched if the retention of the benefit would be unjust. (See Comment (c).)"

In defining what constitutes a benefit, it is said, at the same page:

> "The word 'benefit', therefore, denotes any form of advantage."

483

We could go on endlessly quoting generalities used both in authorities and texts in discussing unjust enrichment and constructive trusts. If they were accepted literally, a creditor might well base a suit for constructive trust on the ground that a prosperous debtor had refused to pay, or an injured person maintain that he is entitled to a constructive trust on the property of a defendant who has refused to recognize an obvious liability for an injury sustained in the wrongful or "unconscionable" misuse of the property. That these words are not intended to be so accepted is clear from reading what follows in the same volume hereinbefore quoted of Restatement, Restitution, at p 641, where it is said:

> "The term 'constructive trust' is not altogether a felicitous one. . . .
> "It is true that both in the case of an express trust and in that of a constructive trust one person holds the title to property subject to an equitable duty to hold the property for or to convey it to another, and the latter has in each case some kind of an equitable interest in the property."

Also throughout the cases and often in the texts where this doctrine is discussed there are found the elements of fraud, fiduciary relationship, or a particular fund derived from a plaintiff.

It is our conclusion that a suit to establish a constructive trust must have an element of fraud or breach of fiduciary relationship or the claim must relate to a particular fund or property *derived from or set apart for the benefit of plaintiff*. No case of fraud, actual or constructive, is made against the fee owners in this case, nor is there any breach of a fiduciary relationship, for none existed between them and plaintiff. Nor can it be said that the fund the fee

owners received from the property was in any way derived from plaintiff or set apart for its benefit.

An effort is made to give plaintiff the status of a sublessee and thereby, we presume, establish it as the holder of an interest in the property, notwithstanding the fact that no sublease could be made without the consent in writing of the fee owners. All that the complaint charges is that the owners knew of the joint occupancy agreement and consented thereto. There is nowhere in the pleadings an averment of compliance with the provision for a consent in *writing*. There is only a general statement in the complaint that consent was given, and a statement in the brief of what it is expected to prove on hearing, which latter does not belong in a brief and cannot be accepted by us. It is argued that as the case was decided on the pleadings and as the complaint states that the owners consented, and as all favorable inferences on behalf of plaintiff should be made, we should assume or infer that *written* consent was given. After plaintiff knew that defendants were making that point, it could have amended its complaint on its face to meet the charge.

█ When an essential requirement to the making of a sublease is that consent of the lessor thereto must be in writing and that is not averred and no adequate excuse for noncompliance is stated, no inference can be drawn that there was such consent in writing. It is our conclusion that plaintiff has no cause of action either at law or in equity against the fee owners.

█ As to Miller and Banker, the only issue here presented is whether plaintiff has a suit in equity or whether it is limited to its action at law, as the chancellor held. What we have said with respect to the imposition of a constructive trust on the funds derived from the sale by the fee owners applies equally to Miller and Banker. However, plaintiff also rests

its case in equity against Miller and Banker on actual fraud. The charge as it is stated in plaintiff's brief is "fraudulent concealment, and even a calculated or intentional course of conduct of deception, through the concealment from plaintiff, and the concealment from, and misrepresentation to, the County of Cook . . ." by defendant Miller and Banker.

We find no allegation of actual fraud against Miller and Banker in the complaint. Fraud is never presumed. The facts constituting the fraud must be clearly and explicity alleged. Anderson v. Anderson, 339 Ill 400, 171 NE 504. Statements in the nature of general conclusions are not sufficient in pleading fraud. The allegations relied on by plaintiff, conditioned as they are on what defendants may or may not have intended, are not sufficient. The real question to be answered is whether Miller and Banker was under obligation to disclose to plaintiff its negotiations with the owners and with the County of Cook, and this in turn depends on whether there was a fiduciary relationship between the parties which imposed on Miller and Banker the duty to make such a disclosure.

If the parties were partners or joint adventurers, the relationship would preclude one of them from purchasing or leasing property relating to the enterprise either for himself or for another without a full disclosure to his associates. Carroll v. Caldwell, 12 Ill2d 487, 147 NE2d 69; Ditis v. Ahlvin Const. Co., 408 Ill 416, 97 NE2d 244; Meinhard v. Salmon, 164 NE 545 (NY, 1928). In this case there was no such joint enterprise. While there was joint occupancy of the coal yard and joint use and control of many of the facilities, the two enterprises were owned and operated separately, there was no joint interest in profits, and no joint obligation as to losses—vital elements in any joint venture. The agreement clearly shows that plaintiff was not obligated to and did not provide

either real estate, capital or services to the venture. It is our conclusion that the chancellor correctly decided that plaintiff's only claim against Miller and Banker is an action at law for damages for the latter's failure to exercise its option to renew the lease for an additional period of five years.

■ We will next consider plaintiff's claim against the County of Cook, set out in Count II of the complaint, which states an action in trespass against the county because upon its entry on May 5, 1961, the county had constructive notice of plaintiff's interest through its possession of the premises. The county argues that plaintiff's interest is that of a mere licensee, terminable at the will of the owners of the property, and that the sale of the property by Miller and Banker and the fee owners to the county extinguished any interest of plaintiff in the property. The written agreement between Miller and Banker and plaintiff provides that Miller and Banker would exercise its option to renew the lease for a period of five years and that plaintiff would thereby continue its occupancy until June 1966. We find it unnecessary to label precisely the extent of plaintiff's interest. The fact is that the county took possession and ousted plaintiff at a time when plaintiff had the ostensible right to occupy the premises for a period at least until June 30, 1961. The question as to whether this was an interest in the property of such character that plaintiff's possession was notice to the county, and the full extent of plaintiff's interest can be determined when the issue between the county and plaintiff is tried. The chancellor's dismissal of Count II, directed against the County of Cook, was error. He should also have referred that issue to the common law court along with the case against Miller and Banker.

■ Count III states plaintiff's case against Catherine Ryan. She was president of Miller and Banker

and a stockholder of that company. As a stockholder it is alleged that she received her share of the proceeds derived from the sale. What she did in this transaction was in her capacity as president of the company. She is also included in the general charge of Count I. It would require a wide stretch of even the general principles relied on by plaintiff to hold Catherine Ryan. The complaint states no case against her in her personal capacity.

The decree is affirmed insofar as it orders dismissal of the suit against Catherine Ryan, individually, Martha J. Dyck, executor of the estate of Maude T. Miller, deceased; Martha J. Dyck, individually, and Franz W. Dyck. It is also affirmed as to the denial of the claim for equitable relief against Miller and Banker. The decree is reversed and the cause is remanded insofar as it dismisses the action at law against the County of Cook, and for such further proceedings as are not inconsistent with the views herein expressed.

Decree affirmed in part and reversed in part and cause remanded with directions.

DEMPSEY and McCORMICK, JJ., concur.