MORTON ZELICKMAN *et al.*, Plaintiffs-Appellants, *v.* BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

(No. 57928; 

First District (1st Division)—July 23, 1973.

Edward Atlas and Harold A. Harris, both of Chicago, for appellants.

Cummings & Wyman, of Chicago, (Austin L. Wyman, Henry F. Vallely, and James M. Staulcup, Jr., of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Morton and Sharlene Zelickman and Walter F. Osborn (plaintiffs) filed a second amended and supplemental complaint (referred to as "complaint") individually and on behalf of all mortgage borrowers from Bell Federal Savings and Loan Association (defendant). Plaintiffs sought an accounting in behalf of the class they seek to represent on the theory that certain sums paid to defendant constituted a trust and earnings upon these funds should inure to the benefit of the class. The trial court sustained a motion to dismiss filed by defendant and filed a memorandum opinion in which he held that no trust was created by virtue of the dealings between plaintiffs and defendant. The opinion stated that the trial judge felt bound by the principle of *stare decisis* to accept the decision of this court in a previous case involving a similar attempt to establish a trust by borrowers from another savings institution. *Sears v. First Federal Savings & Loan Assn.*, 1 Ill.App.3d 621, 275 N.E.2d 300; leave to appeal denied January 27, 1972.

Some time prior to the entry of the order of dismissal, the trial court heard arguments of counsel concerning the legal propriety of the class action in the case at bar. In a lengthy and able memorandum, the trial court held that the allegations in the complaint contain all of the requisite elements for a class action. A motion of defendant to dismiss the suit on this ground was denied. Defendant has taken a cross-appeal from this order. This aspect of the proceeding will be considered at a later point in this opinion.

Counsel for plaintiffs here, the same who represented the plaintiff in *Sears*, have given us a scholarly and thorough exposition of the legal questions presented. Aside from the statement of certain fundamental

principles applicable here, they urge that deposits made each month by plaintiffs of sums for payment of taxes and insurance premiums, are trust funds. They predicate this contention primarily upon three key words, "deposit", "pledged" and "authorized". They urge that these deposits, being made for specific and limited purposes, become trust funds and that this conclusion is fortified by the pledge of the deposits, which also constitutes a trust, as well as by the use of the word "authorized". They urge also that the decision in *Sears* actually supports the trust conclusion here and that defendant is a fiduciary which should be required to account. Plaintiffs contend finally that their action is not barred by rules of primary jurisdiction and exhaustion of remedies.

In response, defendant urges that advance payments for taxes and insurance do not constitute a trust in accordance with our previous holding in *Sears;* intention to create a trust is lacking here; deposit of funds for a special purpose does not create a trust and a pledge is not a trust. Defendant also urges that even if these advance payments were held in trust, it would not be required to account for earnings thereon. Finally, defendant contends that the Federal Home Loan Bank Board has primary jurisdiction over the issues here presented and plaintiffs have not exhausted their administrative remedies.

■■ Development of the facts here involved must commence with a statement of the basic principle that the motion to dismiss filed by defendant admits all properly pleaded allegations of plaintiffs' complaint. See *Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 963, 282 N.E.2d 452, citing decisions of the Illinois Supreme Court. The complaint alleged that plaintiffs had made mortgage loans from defendant using defendant's conventional form. Prior to May 29, 1969, defendant was an Illinois corporation but on that date it was converted to, and formally became, a federal savings and loan association. Defendant was duly chartered by the governments of Illinois and, in turn, of the United States. A sample copy of the type of mortgage signed by plaintiffs and of the type of application for loan executed by them are appended to the complaint.

The application for loan provided that the money borrowed would be repaid in payments of a designated amount, "* * * including principal and interest, plus $\frac{1}{12}$ estimated taxes and Hazard Insurance * * *" with the debt secured by a first mortgage. The application also provided that the borrowers agreed to keep the mortgaged premises insured against such hazards as defendant might require for the full insurable value thereof with the policies to contain proper mortgage clauses. Plaintiffs as applicants, also covenanted:

"To deposit with you [defendant] the amount necessary to

establish a reserve for taxes and insurance as outlined above so that, together with the monthly deposits hereafter made, there will be funds available to pay general taxes by January of the year in which they are due and insurance premiums two months before installments are due."

The mortgage itself conveyed the property to defendant as mortgagee. It provided for repayment of the sum borrowed in monthly installments including interest. Any additional advances, together with interest thereon, that might be made by defendant for protection of the security, constituted additional indebtedness secured thereby. The borrowers further covenanted that the indebtedness thereby secured should include all sums agreed to be paid by them to defendant. The document also contained the following additional convenants by the borrowers:

"(3) To pay when due all taxes and assessments levied against said property or any part thereof under any existing or future law, and to deliver receipts for such payments to the Mortgagee promptly upon demand.

*　　*　　*

(9) To provide for payments of taxes, assessments and insurance premiums, stipulated to be paid hereunder, the Mortgagor shall deposit with the Mortgagee on each monthly payment date an amount equal to one-twelfth of the annual taxes and assessments levied against said premises and one-twelfth of the annual premium on all such insurance, as estimated by the Mortgagee. All such deposits as made are pledged as additional security for the payment of the principal mortgagee indebtedness. If default is made in the payment of said deposits, the Mortgagee may, at its option, charge the same to the unpaid balance of the mortgage indebtedness and the same shall bear interest at the same rate as the principal mortgage indebtedness. As taxes and assessments become due and payable and as insurance policies expire, or premiums thereon become due, the Mortgagee is authorized to use such deposits for the purpose of paying taxes or assessments, or renewing insurance policies or paying premiums thereon. In the event any deficit shall exist or the deposits are so reduced that the remaining deposits together with the monthly deposits will not provide sufficient funds to pay the then current calander [sic] year's estimated taxes or the estimated insurance premium on the last day of said year, the Mortgagee may, at its option, either declare immediately due and payable or add to the unpaid balance of the mortgage indebtedness secured hereby such a sum which shall, together with the remaining deposits and monthly

deposits, provide sufficient funds to pay one year's estimated taxes or insurance premiums on the last day of said year."

The mortgage further provided that time was of the essence thereof and in event of default by plaintiffs as to any covenants therein "* * * or in making of any deposits required hereunder * * *" defendant was authorized without notice to declare all sums secured by the mortgage then immediately due and payable and to foreclose.

The complaint further alleged that plaintiffs paid to defendant all deposits of taxes and insurance required and that each year defendant refunded to any borrower upon request the excess of tax and insurance reserves over the amount required to pay taxes and insurance premiums payable in that year. The complaint alleged that these monies paid to defendant by plaintiffs as tax and insurance deposits were held by defendant as a trustee or fiduciary so that defendant owed a duty to segregate the trust funds and to account to plaintiffs for earnings and profits resulting therefrom. It alleged that defendant has violated this duty by commingling these funds with its general assets and by earning large sums of money therefrom so that defendant has become unjustly enriched; or, in the alternative, has converted these earnings to its own use.

The complaint further alleged that there is no provision in Federal law, or in the law of Illinois, which would afford administrative relief to plaintiffs and the class they represent. It also contained allegations describing the class and purporting to show the necessity for class action and also that plaintiffs' representation of the class would be fair. The motion to dismiss averred that the complaint was substantially insufficient in law for failure to state a cause of action; raising generally the same grounds successfully urged by defendant in the trial court and repeated here.

■■ We have made a careful analysis of the legal documents involved in the case at bar with particularized comparison to those with which we dealt in *Sears*. We have concluded that we should reach here the same result as in the previous case. As we said in *Sears*, the basic legal problem is the true meaning of the language used in the agreement between the parties. In the case at bar, the loan application and the mortgage constitute a binding agreement between these parties. Defendant has performed its covenants by advancing the necessary money to plaintiffs and taking the specified security in return. The rights of these parties must necessarily be governed by the provisions of their own contract.

■■ In *Sears*, we defined "express" and "implied" as used in connection with trusts. The same definitions and reasoning are applicable here. (See

1 Ill.App.3d at 626, 627.) We will first consider whether the language in the two pertinent documents involved here is sufficient to create an express trust. As we stated in *Sears*, we cannot give effect only to portions of these documents. "Each clause and all of the language used must, if possible, be given meaning, life and effect." See *Sears*, 1 Ill.App.3d at 627 and cases there cited.

■■ In our opinion, no express trust can be drawn from the language of the loan application or of the mortgage or from both of these documents combined. Plaintiffs covenanted to pay when due all taxes and assessments and all insurance premiums. Payment of these items thus became a primary obligation of plaintiffs with the contractual right vested in defendant to advance these items in default of payment by plaintiffs. Consequently, paragraph 9 of the mortgage above quoted should necessarily be construed simply as another security device granted expressly to defendant as mortgagee to assist it in making certain that, when the taxes and insurance premiums come due, funds will be available for their prompt payment. In no sense can the language of this instrument be construed as creating an express trust for the benefit of plaintiffs. It is an additional contractual security device for the protection of defendant's rights as a creditor, specifically agreed to in the contract between the parties.

In this regard, we incline to the opinion that the mortgage papers in the *Sears* case might come closer to an express trust than the legal documents here involved. The note in *Sears* created various options in the mortgagee with Option 1 actually providing for the monthly payments to be held in trust without earnings and with Option 2 providing that the payments be carried in a borrower's tax and insurance account and withdrawn by the Association to pay these items. (1 Ill.App.3d at 625.) The mortgage in the case at bar is dissimilar and simply provides that plaintiffs shall deposit the sums in question with the defendant to provide for payment of taxes, assessments and insurance premiums.

Each and all of the points well raised and exhaustively presented here by counsel for plaintiffs was considered and rejected in *Sears*. Plaintiffs emphasize here an alleged difference between the documents in *Sears* and those here. As we pointed out in *Sears*, one single highlight of the legal documents there involved, was the fact that the note used the concept of payment seven or eights times without making reference to a deposit of funds. (1 Ill.App.3d at 629.) In the case at bar, paragraph 9 of the mortgage above quoted provides that the funds shall be deposited to "provide for payments of taxes, assessments and insurance premiums * * *." However, as so well pointed out in the opinion of the learned trial judge, which has been made a part of the record

before us, the result in *Sears* was not based solely upon "payment" as distinguished from "deposit." Our former opinion also emphasized a number of other important elements including the need to examine and to give "meaning, life and effect" to all of the pertinent language in the legal document in question. 1 Ill.App.3d at 627.

We pointed out the absence of language requiring that the tax and insurance account by "segregated", "separated" or "isolated." (1 Ill.App.3d at 628.) We commented upon language in the note authorizing payment by the mortgagee of the taxes and insurance as charged or billed without further inquiry. (1 Ill.App.3d at 628.) There is similar language in the instant mortgage authorizing defendant to use the deposits for payment of taxes or insurance premiums. There is a pledge of the tax and insurance account in *Sears* as further security for the indebtedness due (1 Ill.App.3d at 630) with similar language in the instant mortgage (par. 9 above quoted.) There was a lack of provision in the *Sears* documents for repayment of deposits. (1 Ill.App.3d at 631.) Also, we specifically concluded in the *Sears* opinion that even if the payments there were described as "deposits", as distinguished from "payments", no trust would result. (1 Ill.App.3d at 631.) Virtually every important factor which contributed to and impelled our decision in *Sears*, that no express trust was created by the parties, is present and operative in the case at bar.

Furthermore, in *Sears* we also pointed out the complete lack of "a res or specific property" which "is essential for the existence of a trust." (1 Ill.App.3d at 631.) This is precisely applicable in the case at bar. In *Sears*, we commented upon the lack of a "a segregated deposit set up solely for a specific purpose." (1 Ill.App.3d at 631.) The same situation exists in the present case. We also cited and quoted from other cases and from the regulations of the Federal Home Loan Bank Board, all of which supported the conclusion that there was no trust in *Sears*. (1 Ill.App.3d at 632, 633, 634.) All of these authorities are applicable here. We conclude that the pertinent legal documents in the case at bar do not create an express trust.

We note the allegation in the complaint at bar that defendant has refunded "to any borrower upon request" the excess of the tax and insurance reserve over amounts necessary for payment of taxes and insurance. As pointed out by the trial court in his memorandum, any such payments would simply be a voluntary waiver by defendant of contractual legal rights.

■■ The next inquiry is whether an implied trust arises from the relationship of these parties as alleged in the complaint. In *Sears*, we stated that "Implied trusts may be further categorized into constructive and

resulting trusts." (1 Ill.App.3d at 627). We are not dealing here with a resulting trust which is generally defined and limited to situations in which land or other property "＊　＊　＊　is bought with the money of one person and title is taken in the name of another." (*Suwalski v. Suwalski*, 40 Ill.2d 492, 495, 240 N.E.2d 677.) A constructive trust arises solely by operation of law and then, by way of a general definition, "＊　＊　＊ only when fraud is proved or when advantage is taken of a fiduciary relationship by the dominant party." (*Perry v. Wyeth*, 25 Ill.2d 250, 253, 184 N.E.2d 861.) There are no allegations in the complaint regarding fraud of any kind. Also, there is no fiduciary or confidential relationship existing under the law of Illinois merely by virtue of the relationship of mortgagor and mortgagee. (*De Phillips v. Mortgage Associates, Inc.*, 8 Ill.App.3d 759, 763, 291 N.E.2d 329.) There are no allegations in the complaint at bar from which a fiduciary or confidential relationship or the reposing of confidence by one person in another could be deemed to exist. No facts are pleaded here which give rise to a trust *ex maleficio*, a designation sometimes given to a constructive trust. (Bogert Trusts, 2nd Ed., sec. 471, p. 9.) There are no allegations in the complaint here which show an abuse of confidence by defendant. *Dial v. Dial*, 17 Ill.2d 537, 540, 162 N.E.2d 404.

In oral argument, counsel for plaintiffs cited the recent decision in *Carpenter v. Suffolk Franklin Savings Bank*, (Mass.), 291 N.E.2d 609. There, the Supreme Judicial Court of Massachusetts reversed dismissal of a complaint praying an accounting from a mortgagee as to monthly payments of 1/12th of the general taxes deposited by the mortgagor. The court held that the complaint stated a cause of action and renamed the cause for trial. The court pointed out that the complaint alleged that the tax payments were held by the defendant "as escrowee." (291 N.E.2d at 614.) This is completely different from the situation at bar in which we have no agreement by the parties for segregation, separation or isolation of the tax and insurance account. Also, we have complete lack of any allegation in the complaint that the funds were to be held in escrow as in *Carpenter*.

■■ The *Carpenter* opinion states that there was nothing in the allegations of the complaint in that case which "necessarily precludes a fiduciary relationship ＊　＊　＊." (291 N.E.2d at 615.) In the case before us, such relationship is precluded by Illinois law because of the very nature of the transaction. Further, *Carpenter* deals first with the concept of an express trust (291 N.E.2d at 614) and thereafter with the theory of a constructive trust arising from the possibility of a fiduciary relationship. In the case at bar, the existence of an express trust has been negated. The allegations of the complaint at bar fall far short of setting before us a

factual background which constitutes a constructive trust. Plaintiff's complaint alleged that defendant has become unjustly enriched by the earnings from the tax deposit; or, in the alternative, has converted these earnings to its own use. These allegations are pure conclusions which are not admitted by the motion to dismiss. There are no well pleaded allegations creating a factual situation of constructive trust. (See *Heyman v. Mahin,* 49 Ill.2d 284, 291, 275 N.E.2d 421.) Note also *Dial v. Dial,* 17 Ill.2d 537, 162 N.E.2d 404, dealing with the sufficiency of a complaint seeking to establish a constructive trust.

The facts in the case before us present no fraud, no confidential or fiduciary relationship, no abuse thereof, and no default or conversion of any kind. Under no circumstances can we glean from the allegations of the complaint any facts justifying the imposition of a constructive trust. ■■ We do not find it necessary to pass upon any of the remaining contentions presented by the parties not already considered. Similarly, we need not decide the issues presented by the cross-appeal regarding the sufficiency of the complaint as a class action. Since we have held that plaintiffs have no individual cause of action, it would follow necessarily that any attempted class action must fail. See *De Phillips v. Mortgage Associates, Inc.,* 8 Ill.App.3d 759, 764, 291 N.E.2d 329, which we have followed in *Janes v. First Federal Savings & Loan Association of Berwyn,* 11 Ill.App.3d 631, and also in *Corbett v. Devon Bank,* 12 Ill.App.3d 559.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.