RICHARD J. DURKEE *et al.*, Plaintiffs-Appellants, *v.* FRANKLIN SAVINGS ASSOCIATION, Defendant-Appellee.

(No. 72-221;

Second District—March 26, 1974.

Thomas L. Ruth, Jr., of Barrington, for appellants.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiffs Richard and Elizabeth Durkee sought equitable relief from defendant Franklin Savings Association in the form of an accounting. They filed this action individually as mortgagors of defendant, and as representatives of the class of all other mortgagors of defendant whose mortgaged real estate is located in any of the Illinois counties of DuPage, Lake, McHenry, Kane, Will and Cook. In their complaint plaintiffs alleged that they were entitled to all profits realized by defendant from its investment of monthly real estate tax and insurance premium "deposits" made to it by plaintiffs pursuant to the terms of their mortgage agreement with defendant. An order was entered in the Lake County

Circuit Court dismissing plaintiffs' complaint for failure to state a cause of action.[1] The order contained an express finding that there was no just reason for delay in its enforcement or appeal.

Although several questions have been presented to us, one question is dispositive of this appeal's outcome: whether plaintiffs' monthly payments to defendant of amounts equaling $\frac{1}{12}$ of their annual real estate tax and insurance premiums are "special deposits" which constitute "trust funds" in the hands of defendant.

Plaintiffs alleged in their complaint that according to the terms of their mortgage with defendant, they were required to, and did, make monthly "deposits" with defendant for the creation of a reserve of funds to be used by defendant to pay, when due, the real estate taxes and insurance premiums on their property. Plaintiffs further alleged that during the period these reserve funds accumulated, awaiting the date on which the taxes and insurance premiums become due, defendant "diverted these funds from their intended purpose" and appropriated them for its sole benefit and profit; without crediting plaintiffs with the profits realized by defendant as a result of its personal investment of these funds.

At the outset we deem it noteworthy that, although similar, neither the decision of *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill.App.3d 621, 275 N.E.2d 300, nor that of *Zelickman v. Bell Federal Savings & Loan Association* (1973), 13 Ill.App.3d 578, 301 N.E.2d 47, is determinative of the issue before us. The holdings in *Sears* and *Zelickman* were expressly premised on the true meaning of the language contained in the specific mortgage agreements in each case.

Accordingly, to determine whether plaintiffs' monthly real estate tax and insurance premium payments constitute special deposits which would take on the character of trust funds, we must examine the relevant portions of the mortgage agreement between the parties in this case:

"B    In order to provide for the payment of taxes, assessments, insurance premiums, and other annual charges upon the property securing this indebtedness, and other insurance carried or accepted, I *promise to pay* monthly to the Mortgagee, in addition to the above payments [*i.e.*, principal and interest on mortgage note], a sum estimated to be equivalent to. $\frac{1}{12}$ of such items, which *payments* may, at the option of the Mortgagee, (a) be held by it and *commingled* with other such funds or its own funds for

---

[1] Plaintiffs' complaint consisted of two counts. Plaintiffs, however, have stipulated in this court that Count I is insufficient in law; therefore our consideration will only be directed to the legal sufficiency of Count II.

the payment of such items; (b) be carried in a savings account and withdrawn by it to pay such items; or (c) be credited to the unpaid balance of said indebtedness as received, provided that the Mortgagee advances upon this obligation sums sufficient to pay said items as the same accrue and become payable. If the amount estimated to be sufficient to pay said items is. not sufficient, I *promise to pay* the difference upon demand. If such sums are held or carried in a savings account, the same are hereby pledged to further secure this indebtedness. The Mortgagee is authorized to pay said items as charged or billed without further inquiry." (Emphasis added.)

Bank deposits are characterized as either general or special. A deposit in a bank is presumed to be a general deposit; and the moment the money is deposited it actually becomes the property of the bank. The bank and the depositor thereby assume the legal relation of debtor and creditor. (*Brahm v. Adkins* (1875), 77 Ill. 263, 264; *Marine Bank of Chicago v. Rushmore* (1862), 28 Ill. 463, 471.) A special deposit, however, is sometimes said to be equivalent to a bailment. A special deposit generally arises where it is the duty of the depositary bank to hold for use of the depositor, not the identical bills or coins, but an equivalent sum to be kept intact or separated from the depositary's other funds. *Woodhouse v. Crandall* (1902), 197 Ill. 104, 64 N.E. 292; *Genesee Wesleyan Seminary v. United States Fidelity & Guaranty Co.* (1928), 247 N.Y. 52, 159 N.E. 720.

Plaintiffs contend that their monthly real estate tax and insurance premium payments constitute special deposits because they are deposited for a specifically designated purpose, *i.e.*, to provide for payment of these items when they become due. In support of this contention plaintiffs rely on *People ex rel. Russell v. Farmers State and Savings Bank* (1930), 338 Ill. 134, 170 N.E. 236, and *People ex rel. Auditor of Public Accounts v. West Side Trust & Savings Bank* (1941), 376 Ill. 339, 33 N.E.2d 607. Although these two cases do enunciate general definitions of special deposits, the cases do not support plaintiffs' contention inasmuch as they are factually distinguishable. Both cases involve true deposit relationships—a contractual relationship between the depositor and the depositary bank which arises from the *delivery* of money by the depositor into the possession of the bank. 10 Am.Jur.2d *Banks*, sec. 337.

The contractual relationship between plaintiffs and defendant Franklin Savings Association, however, did not arise upon the delivery of the first monthly real estate and insurance premium payments to defendant.

Rather, the contractual relationship between plaintiffs and defendant arose upon plaintiffs' execution of the mortgage agreement wherein they promised "to pay" the required monthly amounts to defendant.

■■ Further differentiating between the legal effect of payment vis-à-vis deposit, we note that the portion of the mortgage agreement before the court in *Sears* (1971), 1 Ill.App.3d at 625-626, 276 N.E.2d at 302, which related to the mortgagor's contractual undertaking to "pay" monthly portions of the real estate taxes and insurance premiums is substantially similar to the terms contained in the mortgage agreement before us. As Mr. Justice Goldberg pointed out in *Sears* (1971), 1 Ill.App.3d at 628-629, 275 N.E.2d at 304:

> "These terms 'deposit' and 'payment' have a variety of legal meanings. However, one attribute of a deposit is that the depositor retains a right, generally under stated circumstances, to receive back all or part of the deposit or its equivalent; quite analagous to the rights of a creditor. [Citations.] In payment, the money is delivered to the creditor and the debtor receives simply a satisfaction of the debt; either *pro tanto* or in full as the case may be ＊ ＊ ＊.
>
> Webster's Second New International Dictionary defines the verb 'to pay' as 'to discharge one's obligation.' ＊ ＊ ＊ The central attribute of a deposit is lacking. The questioned language of the note executed by plaintiff uses the concept of payment ＊ ＊ ＊. No language refers to a deposit of funds. No right of refund to the borrower is established or even mentioned. All that we have here from the language of this note is a binding direction imposed upon defendant as a creditor concerning payment of taxes and insurance." [2]

This statement from *Sears* is equally applicable to the terms of the mortgage agreement between plaintiffs and defendant in the case before us. Plaintiffs' mortgage agreement is devoid of any language that would allow them to receive back any or all of their monthly partial tax and insurance payments after such sum is paid to defendant. It was incumbent upon plaintiffs to pay these tax and insurance items monthly in order to discharge their monthly contractual obligation to do so. Thus, plaintiffs' monthly payments toward the real estate taxes and insurance premium on their mortgaged property did not constitute deposits in the legal sense of that term; a fortiori, the payments did not constitute special deposits.

---

[2] Plaintiffs Durkee have not alleged in their complaint, nor have they argued in this appeal, that defendant has not, in fact, paid the real estate taxes and insurance premiums when they become due.

By the express terms of their mortgage agreement, plaintiffs promised to pay monthly a pro rata portion of their real estate taxes and insurance premiums. Monthly payment of these items is, contrary to plaintiffs' contention, no less a primary obligation of plaintiffs than their monthly payments of principal and interest on the mortgage note secured by their real estate. This conclusion is further supported by the fact that the mortgage agreement provides that defendant may accelerate the principal debt owed and foreclose plaintiffs' mortgage upon their default in the monthly payment toward taxes and insurance which is required by the afore-quoted covenant B of the mortgage agreement. Accordingly, covenant G of the mortgage agreement reads in relevant part:

> "That time is of the essence hereof and if default be made in performance *of any covenant herein contained,* or in making any payment under said note or obligation * * * the Mortgagee is hereby authorized and empowered * * * to declare without notice, all sums secured hereby immediately due and payable * * *." (Emphasis added.)

■■ Having established that plaintiff's monthly payments did not constitute special deposits or trust funds, defendant was not obligated to keep this money intact, separated, or segregated from its other funds. Defendant is not, therefore, required to account to plaintiffs for any alleged profits realized by it from allegedly investing these funds.

Even if the monthly payments made by plaintiffs were construed as deposits, they would not be special, but rather general in character. One of the indispensable requirements for the creation of a trust of money which is deposited in a bank for a specific purpose is the understanding of the parties that the money deposited is not to be used by the bank for its own purpose. (Restatement (Second) of Trusts, sec. 12, comment (1).) Likewise, the general statement in 10 Am.Jur.2d *Banks,* sec. 363 reads in part:

> "In the absence of an agreement and proof to the contrary, a deposit is presumed to be general rather than special, and the burden evolves upon the party that claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact."

As previously illustrated, the mortgage agreement between the plaintiffs and defendant expressly authorizes defendant to commingle plaintiffs' monthly payments with its own funds. Contrary to the interpretation urged by plaintiffs' counsel at oral argument, we do not interpret this authorization to commingle as being limited only for the payment

by defendant of the real estate taxes and insurance premiums when they become due. Hence, this clear authorization to commingle negates any intention of the parties that the monthly payments made by plaintiffs were to be kept intact, separated or apart from the other funds of defendant. See *First National Bank v. Julian* (8th Cir. 1967), 383 F.2d 329, 338; *cf. First Federal Savings & Loan Association v. Board of Equalization* (1967), 182 Neb. 25, 152 N.W.2d 8.

Although not cited by plaintiffs, the case of *Carpenter v. Suffolk Franklin Savings Bank* (1973), —— Mass. ——, 291 N.E.2d 609, requires comment. In *Carpenter* the Supreme Judicial Court of Massachusetts reversed the trial court's dismissal of a complaint seeking an accounting from the defendant mortgagee as to profits derived from investment of its mortgagor's monthly real estate tax payments. The complaint in *Carpenter* was substantially similar to the one before us, but also included the allegation that the defendant mortgagee held the plaintiff's monthly real estate tax payments " 'as escrowee'." (291 N.E.2d at 614.) The mortgage agreement was not attached to the complaint; and the court stated that "an escrow account" tended "to negate the notion of a debtor-creditor relationship." (291 N.E.2d at 614.) The court therefore held that the complaint properly put in issue the creation of a trust arising from "special deposits.' The court also stated that the defendant mortgage could be held, upon remand, to have assumed the rule of a fiduciary or trustee.

In the complaint before us, however, unlike the one in *Carpenter*, plaintiffs have not alleged that defendant Franklin Savings Association holds plaintiffs' monthly real estate tax and insurance premium payments as escrowee. Moreover, plaintiffs have attached and incorporated into their complaint by reference, their mortgage agreement with defendant; and as reasoned above, the express terms of this argeement do not warrant characterizing plaintiffs' monthly payments as special deposits.

Plaintiffs have also cursorily argued that defendant's alleged conduct of investing the funds in question requires imposition of a constructive trust on any of the alleged profits realized. A constructive trust is an equitable device utilized to "compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." (Bogert, *Trusts and Trustees* (2d ed. 1960), sec. 471.) The greater weight of Illinois case authority mandates impression of a constructive trust only when advantage is taken of a fiduciary relationship by the dominant party, or when fraud is proven. *Perry v. Wyeth* (1962), 25 Ill.2d 250, 184 N.E.2d 861; *Dial v. Dial* (1959), 17 Ill.2d 537, 162 N.E.2d 404; *Compton v. Compton* (1953), 414 Ill. 149, 111 N.E.2d 109;

*Williams v. Teachers Insurance and Annuity Association* (1973), 15 Ill.App.3d 542, 304 N.E.2d 656; compare *In re Estate of Ray* (1972), 7 Ill.App.3d 433, 287 N.E.2d 144; *J. C. Else Coal Co. v. Miller and Banker* (1964), 45 Ill.App.2d 475, 196 N.E.2d 233; *Board of Trustees v. Village of Glen Ellyn* (1949), 337 Ill.App. 183, 85 N.E.2d 473.

■■■ There are no allegations in plaintiffs' complaint of either creation and breach of fiduciary duty, or fraud. Since the relationship between mortgagor and mortgagee, alone, is insufficient in Illinois to give rise to a fiduciary relationship as a matter of law (*Galvin v. O'Neill* (1946), 393 Ill. 475, 66 N.E.2d 403; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill.App.3d 759, 291 N.E.2d 329), allegations of fact which would illustrate a fiduciary relationship are essential elements in a complaint which attempts to establish such a relationship. Plaintiffs' complaint contains no facts upon which such a relationship may be inferred nor does the complaint contain any allegations of fraud on the part of defendant. Therefore, plaintiffs' complaint fails to conform to the established principal of pleading which requires specificity in order to establish a constructive trust. *Perry v. Wyeth, supra; Dial v. Dial, supra; Williams v. Teachers Insurance and Annuity Association, supra.*

■■ Finally, since we have held that plaintiffs have no individual cause of action, it necessarily follows that any attempted class action must also fail. (*Zelickman v. Bell Federal Savings & Loan Association, supra.*) For the reasons stated, the trial court properly dismissed plaintiffs' complaint for failure to state a cause of action.

Judgment affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.