36 N.Y.2d 173 (1975)
In the Matter of Surrey Strathmore Corp., Appellant,
v.
Dollar Savings Bank of New York, Respondent.
Court of Appeals of the State of New York.
Argued January 7, 1975.
Decided February 27, 1975.
Henry A. Spelman and Harry P. Albert for appellant.
Robert S. Stitt, George W. Taliaferro, Jr. and Joan H. Hillenbrand for respondent.
Louis J. Lefkowitz, Attorney-General (Stanley Kantor, Samuel A. Hirshowitz, Meyer H. Mencher and Sol Koenigsberg of counsel), amicus curiae.
John J. Walsh, Stuart D. Root and W. Mowry Connelly for Federal National Mortgage Association, amicus curiae.
Chief Judge BREITEL and Judges JASEN, GABRIELLI and COOKE concur with Judge JONES; Judges WACHTLER and FUCHSBERG dissent and vote to reverse in their own separate opinions.
*175 JONES, J.
On this appeal we are asked to hold that under the terms of a commercial mortgage, the corporate mortgagor is entitled in a proceeding under CPLR article 77 to an accounting with respect to installment payments made to the institutional mortgagee on account of real estate taxes on the mortgaged premises. The ultimate objective of the mortgagor is to establish its right to the income, if any, realized by the mortgagee with respect to the moneys paid into the tax account. In the circumstances disclosed in this record we conclude that this mortgagor is not entitled to such an accounting.
Appellant, a business corporation which for several years had owned and operated an apartment complex in White Plains, entered into an agreement with respondent Savings Bank pursuant to which the latter made a $450,000 loan secured by a first mortgage on the apartment complex premises. In addition to the customary mortgage provisions with respect to the mortgagor's obligations to repay principal with interest and to maintain the mortgaged premises, the mortgage contained a now familiar agreement to make installment payments on account of real estate taxes on the mortgaged premises. In this instance that agreement was expressed as follows: "That in order more fully to protect the security of said mortgage, together with and in addition to the monthly payments of principal and interest provided for in the bond which this mortgage secures, the mortgagor will pay to the mortgagee on the first day of each month until the said principal sum is fully paid, an installment of the taxes levied or to be levied against said premises. Such installments shall be equal, to the estimated taxes next due (as estimated by the mortgagee) less all installments already paid therefor, divided by the number of months that are to elapse before one month prior to the date when such taxes will become due. The mortgagee shall hold such monthly payments in trust to apply the same against such taxes, when due, with the right, however, to the mortgagee to apply, after default, any sums so received, as provided in Clause `38' hereof."
*176 At the closing the mortgagor's secretary-treasurer inquired about payment of interest on funds in the tax account and was told that interest would not be paid. A month and a half after the closing mortgagor requested that the bank hold the tax moneys in a separate interest-bearing account and account to the mortgagor at least semiannually therefor. On the mortgagee's refusal to recognize the claims asserted by it the mortgagor instituted the present proceeding under article 77 for an accounting of the payments received together with income earned thereon and for judgment against the mortgagee for all interest income earned.
Special Term concluded that the mortgagor was not entitled to receive interest on payments made to the tax account nor was it entitled under a trust theory to any profits earned on the moneys held. The Appellate Division, after modifying with respect to an issue no longer pressed, affirmed without opinion and granted the mortgagor leave to appeal to our court. In our court appellant mortgagor has abandoned any claim to interest as such and urges only its right to a trust accounting and its entitlement to any earnings shown to have been realized by the mortgagee.
In the circumstances of the relationship between these parties it does not advance our inquiry into the determination of the rights of the mortgagor or of the obligations of the mortgagee to proceed in reliance on categorical concepts suggested by such labels as "trust", "agency", "escrow", "debtor-creditor", for it must be evident that the relationship here does not fall essentially under any one of such classical headings or any identifiable combination of them. Reasoning predicated on such concepts would accordingly be untrustworthy. We cannot, for instance, ground any conclusion on the use of the words "in trust" in this particular mortgage clause. Resolution of the issues must depend rather on what rights and obligations the parties are found to have intended to create as manifested by the words they used in their written agreement, with parol evidence admissible to clarify ambiguities, if any, under recognized canons of construction.
Preliminarily we note that the case is before us on the bank's motion to dismiss the petition for failure to state a cause of action. Pursuant to the provisions of CPLR 3211 (subd. [c]) *177 the parties submitted affidavits and the courts below have in effect treated the motion as a motion for summary judgment. The affidavits submitted by the parties raise no issues of fact or credibility, anticipate the availability of no additional extrinsic evidence, and identify no factual inferences to be drawn from extrinsic evidence. In this circumstance then there is no occasion for fact-finding by a jury and the issue is to be determined by the court as a matter of law. (Hartford Acc. & Ind. Co. v. Wesolowski, 33 N Y 2d 169, 172; Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 290-291.)
We observe that the written expression of the agreement of the parties contains no explicit provision, one way or the other, with respect to payment of interest or earnings on the tax payments. The payment of interest or earnings was not indispensible to effectuate the objectives of the mortgage agreement and there is no other provision of the written instrument from which it may be inferred that the parties intended that there be payment of interest or earnings. Indeed, from the parties' silence the inference may be drawn that no such payment was intended. Even the canon of construction that a written instrument is to be interpreted against the party responsible for its draftsmanship cannot be employed conclusively to fill hiatuses in the instrument or to supply terms as to which the parties themselves omitted to make any provision. There being no express agreement of the parties and no predicate for any inference that such an agreement was intended, we conclude that this mortgagor is not entitled to the relief it now seeks.
To the extent that it might be argued that the mere absence of an express provision that the mortgagor would not be entitled to any payment, in the context of the mortgagor-mortgagee relationship, creates an ambiguity as to the intention of the parties, we turn to the relevant parol evidence to resolve any such ambiguity. Here we have the undisputed proof as to what was said when the agreement was signed at the closing. That evidence explicitly confirms the earlier inference that no payment was intended. While it may be said that only the word "interest" was then used, in context we can only conclude that this mortgagor intended, when the question was asked and answered, to inquire whether the bank as mortgagee would make any return payment, however characterized, with respect *178 to moneys paid by the mortgagor into the tax account. The answer was a categorical "no".
The officers of this corporate mortgagor were clearly experienced in real estate financing; contentions that this was a contract of adhesion which might be made were the relative statuses or the relationship of the parties different, are not available. We can only conclude that the mortgage papers in this instance were executed and the proceeds of the loan received without expectation of payments of either interest or earnings.[1]
To the extent that as a matter of public policy restrictions should be placed on the absolute freedom of either party to an agreement of the sort here involved to impose terms on the other, the issue is one for legislative address. By enactment of chapter 119 of the Laws of 1974, sections 14-b and 5-601 were added to the Banking Law and the General Obligations Law, respectively, to require the payment of interest, at rates set by the Banking Board, on tax accounts with respect to mortgages on one to six-family owner-occupied residences commencing July 1, 1974.[2]
Accordingly the order of the Appellate Division should be affirmed.
WACHTLER, J. (dissenting).
Under the instrument in question, the appellant mortgagor was obligated to tender to the respondent bank monthly installments of the real estate taxes levied or to be levied against the mortgaged premises. Moreover, *179 the bank was to hold the money and to apply the same against the taxes as they came due and to credit the excess on subsequent payments of the same nature. During the period for which the mortgagor is seeking an accounting, the bank continuously held approximately $35,000 above the amount needed to satisfy the real estate tax obligations. Significantly, the agreement provided that the money would be held "in trust".
These are words of art which impart a great deal. While I agree that a mere label will not transform what is not otherwise a trust into a trust, I believe that it should be accorded some weight in determining whether the instrument manifests an intention to create a trust. In analyzing such an instrument it is imperative to consider the parties involved, and whether it embodied the entire agreement between the parties.
Here, the majority properly characterizes the mortgagor as a sophisticated borrower, as indeed he is. Just as clear is the fact that the bank is a sophisticated lender. The majority rightfully concludes that this forecloses a claim of a contract of adhesion. However, the majority fails to take into account the fact that the bank prepared both the form and the content of the agreement[*] thereby overlooking the cardinal rule of construction that an instrument should be construed against the drafter.
As I view this matter, the question is whether the instrument taken as a whole manifests an intent to confer upon the bank the powers and duties of a trust (1 Scott, Trusts [3d ed.], § 24, p. 192). Here, the instrument created a special fund designated and delivered to the bank for a special purpose, i.e. to pay real estates taxes, with the excess being credited to the mortgagor. Clearly such a relationship embodies the essential elements of a trust  a fund and delivery of title to the trustee, a trustee and a designated beneficiary (City Bank Farmers Trust Co. v. Charity Organization Soc. of City of N. Y., 238 App. Div. 720, affd. 264 N.Y. 441; Martin v. Funk, 75 N.Y. 134). The legal consequence flowing from such an instrument is that a trust has been created. Indeed on similar facts other courts have concluded that a trust relationship existed (e.g., Carpenter v. Suffolk Franklin Sav. Bank, ___ Mass. ___, 291 N. E. 2d 608; *180 Buchanan v. Brentwood Fed. Sav. & Loan Assn., ___ Pa. ___, 320 A. 2d 117; compare Tierney v. Whitestone Sav. & Loan Assn., 77 Misc 2d 284 with Raab v. Bowery Sav. Bank, 77 Misc 2d 1054).
While the majority rightfully concludes that the sophistication of both parties forecloses a claim of a contract of adhesion, it does not explain how the majority could gloss over the wording of the agreement so as to circumvent the parol evidence rule. Where the manifestation of intention is integrated in a writing, evidence of prior and contemporaneous matters is not admissible (1 Scott, Trust, [3d ed.], § 38, p. 300; Richardson, Evidence [10th ed.], § 601). In any event, since the conversation at the closing referred only to the fixed obligation of interest and not the obligation to account for profits, the creation of a trust was not negated.
Accordingly, I would reverse and remand for a hearing to determine whether or not the bank realized profits by virtue of the trust.
FUCHSBERG, J. (dissenting).
The mortgage agreement, under which the real estate tax escrow payments involved here were made by appellant, comes before us for review as a result of respondent's CPLR 3211 (subd. [a], par. 7) motion to dismiss on the ground the petition does not state a cause of action. I conclude it does.
In pertinent part, the agreement provides: "The mortgagee shall hold such monthly payments in trust to apply the same against such taxes when due". (Emphasis added.)
Respondent contends that even if all of petitioner's allegations, including those incorporating the language of the agreement, are true, petitioner ultimately will not be able to prove a trust relationship was created or intended. Perhaps because it is so early in the case, it has not sought to reform the instrument. Instead, in support of its contention, respondent points to parol evidence consisting of a conversation that occurred during the closing.
In that conversation, petitioner inquired whether interest payments would be made by respondent on the tax escrow fund. Respondent replied that it would not do so. As the majority *181 itself has made clear, the express language of the conversation referred to "interest" and not to "earned income". That becomes significant.
For, though respondent urges that the conversation conclusively demonstrates that the parties did not intend a trust relationship, it does no such thing. An obligation to pay interest would interdict a trust, but the lack of an obligation to do so is consistent with the existence of just such a relationship. Comment g of section 12 of the Restatement of Trusts, 2d, provides: "If there is an understanding between the parties that the person to whom money is paid shall pay `interest' thereon (at a fixed or at the current rate, and not merely such interest as the money, being invested, may earn) the relationship is practically always a debt and not a trust. Interest is paid for the use of the money, and if the payee pays interest he is, in the absence of a definite understanding to the contrary, entitled to use the money for his own purposes. It is theoretically possible, of course, for a trustee to pay `interest' from his own funds, but in the absence of a clear agreement to that effect such an intention would not be found."
Once we understand that the elimination of an obligation to pay "interest" does not negate the existence of a trust relationship, then it becomes clear that the absence of a discussion about any actual "earned income" does not do so either. To reason otherwise would be to beg the question, which is whether a trust is created. If it is, then appellant's right to the income actually earned automatically follows as a matter of law without the necessity of any agreement, written or oral, to spell it out. (Matter of Wignall v. Fletcher, 303 N.Y. 435, Blaustein v. Pan Amer. Petroleum & Transp. Co., 174 Misc. 601, mod. 263 App. Div. 97, affd. 293 N.Y. 281; Lonsdale v. Speyer, 249 App. Div. 133.)
And, though the phrase "in trust" is not conclusive (which it need not be for the purposes of the motion which gives rise to this appeal), I cannot assent to its characterization as a meaningless "label", especially when used in an instrument drawn by a large banking institution in a transaction between two sophisticated parties. As words of art, used by at least one skilled and experienced legal draftsman, they impart a great deal and should be accorded considerable weight. The *182 essential elements of a trust  a designated beneficiary, a trustee, a fund and delivery of title to the res to the trustee  are all here. (City Bank Farmers Trust Co. v. Charity Organization Soc. of City of N. Y., 238 App. Div. 720, affd. 264 N.Y. 441.)
Of course, it may be, as at least one of the amici tries to suggest, that there were no earnings or that the proof of what the earnings were might be difficult, but those would be matters for trial.
Nor do I see how we here can determine that when appellant raised a question about interest, with its connotation of a fixed obligation, it intended to include whatever income was actually earned. Or that it intended to subscribe to any as yet unproved practice followed by other parties in other deals under whatever may be their own variety of mortgage agreements. The assumption of adherence to any such practice would be all the more illusory at a time when the trend of public policy appears  as witness the very provisions of the Banking Law and General Obligations Law referred to by the majority  to frown on the retention of such earnings by mortgagees as windfalls to be avoided. That is not to say that I believe it necessary to this determination to give judicial recognition to such a policy here, though I note that both the highest courts of Massachusetts and of Pennsylvania have recently held that allegations similar to those of the petitioner, and even in the absence of specific trust language, are sufficient to withstand motions in the nature of a demurrer. (See Buchanan v. Brentwood Fed. Sav. & Loan Assn., ___ Pa. ___, 320 A. 2d 117; Carpenter v. Suffolk Franklin Sav. Bank, ___ Mass. ___, 291 N. E. 2d 609.)
Thus, even if respondent's motion here had been converted into one for summary judgment,[*] the agreement, which, on its face, appears to create a trust, would, in the presence of any *183 claimed ambiguity, require that any such ambiguity and the underlying intention of the parties be explored at a hearing where each party could present whatever proof is available to it, including all relevant closing, preclosing and postclosing statements rather than a single undeterminative question and answer.
As we have had occasion to say not too long ago: "If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury (Restatement, 2d, Contracts, T. D. No. 5, § 238). On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court. (Cf. Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 291.)" (Hartford Acc. & Ind. Co. v. Wesolowski, 33 N Y 2d 169, 172.)
The order should be reversed.
Order affirmed, without costs.
NOTES
[1] We note that the basic issue here involved has been confronted elsewhere. Some decisions have upheld the position of the mortgagee (e.g., Manchester Gardens v. Great West. Life Assur. Co., 205 F.2d 872; Tucker v. Pulaski Fed. Sav. & Loan Assn., 252 Ark. 849; Durkee v. Franklin Sav. Assn., 17 Ill. App. 3d 978 [also Zelickman v. Bell Fed. Sav. & Loan Assn., 13 Ill. App. 3d 578; Sears v. First Fed. Sav. & Loan Assn., 1 Ill. App. 3d 621]; Yudkin v. Avery Fed. Sav. & Loan Assn., 507 S. W. 2d 689 [Ky.]; Richman v. Security Sav. & Loan Assn., 57 Wis. 2d 358). Other cases support the mortgagor (e.g., Carpenter v. Suffolk Franklin Sav. Bank, ___ Mass. ___, 291 N. E. 2d 609; Buchanan v. Brentwood Fed. Sav. & Loan Assn., ___ Pa. ___, 320 A. 2d 117).
[2] We note the pendency of litigation challenging the 1974 legislation (Jamaica Sav. Bank v. Lefkowitz, in the United States District Court for the Southern District of New York). It is our intention that nothing in the decision in this case or in the expression of our opinion should be understood as bearing even indirectly on the issues raised in that or any similar litigation.
[*] It should also be noted that the bank could have avoided its obligation to account for profits, if it had included an express disclaimer in the instant mortgage.
[*] Since a September 1, 1973 amendment of CPLR 3211 (subd. [c]), a court "after adequate notice to the parties, may treat the motion as a motion for summary judgment." The order here was made on May 3, 1973. However, even before the amendment, it was held that, as a rule, unless the parties themselves request it, they should be apprised of any intention to so treat a 3211 motion in order that "an appropriate record * * * may be made by the parties". (Mareno v. Kibbe, 32 A D 2d 825.) The record here does not disclose any such notice or request.