## Felger v. First Federal S. & L. Assn. of New Castle

*Howard Specter,* for plaintiffs.
*Perry L. Reeher,* for defendant.

HENDERSON, *P.J.,* September 15, 1975—On September 19, 1974, plaintiffs commenced this action by filing a complaint in equity against defendant, a federally-chartered savings and loan institution. Plaintiffs seek to represent themselves and all persons similarly situated who have borrowed money from defendant and who, in order to secure such loans, have executed mortgages upon real estate, as well as personal bonds to accompany said mortgages, containing a specified real estate tax and insurance escrow provisions.

The real estate tax and insurance escrow provision, which is the subject of this complaint, is contained in the copy of plaintiff's mortgage agreement. This provision requires the mortgagor to pay all taxes and assessments levied against the real estate and all insurance premiums against fire and other hazards which shall seem necessary to the

mortgagee (defendant). These payments are to be made monthly to the mortgagee in an amount equal to one-twelfth of the annual taxes, assessments and insurance premiums.

The complaint alleges that, pursuant to the above-mentioned escrow provision, defendant receives and holds these moneys as a trustee or other fiduciary for plaintiffs and the members of the class they seek to represent. The complaint alleges that, in violation of its trust or fiduciary duty, defendant has commingled and continues to commingle these escrow payments with defendant's general funds. Defendant, according to the complaint, has earned, and continues to earn, large sums of money from the use and investment of these trust funds. The complaint avers that defendant, as trustee or fiduciary of these funds, has the obligation to either apply said funds directly to the reduction of the mortgage each month or to segregate said trust funds and to account to the mortgagors for all earnings and profits which defendant has earned by the use and employment of said funds in the operation of its business.

Plaintiffs pray for various forms of equitable relief on behalf of themselves and all other persons, firms and corporations who have borrowed money from defendant pursuant to mortgage agreements containing this escrow provision. Defendant filed preliminary objections objecting to the maintenance of the class action, a petition for the joinder of necessary parties, a demurrer to the complaint, and a petition raising a question of jurisdiction.

## I. CLASS ACTION

Historically, class actions were not permitted at common law. The class action device had its origin

in equity[1] and class actions in Pennsylvania are presently governed by Pa. R.C.P. 2230. Rule 2230 adopts the practice under former Pennsylvania Equity Rule 16 (1924) and under F. R.C.P. No. 23,[2] and reads as follows:

"(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto.

"(b) An action brought on behalf of a class shall not be dismissed, discontinued or compromised nor shall a voluntary nonsuit be entered therein without approval of the court in which the action is pending."

Although Rule 2230 has been in effect since 1941, until recently there have been relatively few Pennsylvania appellate decisions concerning class actions. This resulted, in large measure, from the preference of plaintiffs in class actions for a Fed-

1. For a brief discussion of the origins of the class action device, see Goodrich-Amram, §2230(a)-2 (1962); a more thorough discussion can be found in Wright and Miller, Federal Practice and Procedure, sec. 1751 (1972).

2. Rule 2230 was adopted on June 7, 1940. To this date, Pennsylvania has not officially adopted the 1966 amendments to F.R.C.P. No. 23. The extent, if any, to which the 1966 amendments to the Federal rules will apply to class actions in Pennsylvania is, as yet, unclear. While this question is not crucial to this particular aspect of the case, it has provoked considerable debate in recent Pennsylvania decisions. For an excellent discussion of this issue and recent Pennsylvania appellate decisions concerning class actions, see Amram and Schulman. Annual Survey of Pennsylvania Legal Developments — Part I, Civil Practice and Procedure, 46 Pa. Bar Assn. Q. 254, 267-71 (1975). See also Goodrich-Amram, §2230(a)-1 (1975 Supp.)

eral forum. However, since the United States Supreme Court's recent decisions in Zahn v. International Paper Company, 414 U.S. 291, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973), and Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), which severely limited class actions in the Federal courts, the volume of class actions in Pennsylvania courts has risen sharply. Despite this increase, appellate guidelines governing the propriety of maintaining a class action remain murky in several respects, and resort to Federal case law appears essential. See McMonagle v. Allstate Insurance Company, 458 Pa. 317, 331 A. 2d 467, 468, fn. 2 (1975).

Recently, our Supreme Court considered a case similar to the instant case in Buchanan v. Brentwood Federal Savings & Loan Assoc., 457 Pa. 135, 320 A. 2d 117 (1974) (hereinafter cited as Buchanan). In Buchanan, 29 plaintiffs filed a class action against 32 lending institutions "and other unknown banking institutions and savings and loan associations doing business in Allegheny County, Pennsylvania." Plaintiffs claimed that they had borrowed money from defendants and, as security for these loans, had given mortgages upon real property and executed personal bonds to accompany said mortgages. Each mortgage and bond contained a provision requiring the mortgagor to pay all taxes and assessments on the real estate and all fire and casualty insurance premiums. The mortgagors were required to pay to defendants each month one-twelfth of the annual taxes, assessments and premiums. Although different language was used in the lending agreements employed by the several defendants, plaintiffs alleged, inter alia, that in each case this created a trustee or fidiciary relationship and de-

manded an accounting for the interest earned on the monthly payments.

Plaintiffs sought to represent themselves and all other mortgagors who had entered into mortgage agreements with mortgage lending institutions in Allegheny County. Plaintiffs also sought relief against defendants individually and against all other similarly — situated banking institutions and savings and loan associations in Allegheny County.

After considering the propriety of the class action, the Supreme Court remanded the case to the Allegheny County Court of Common Pleas. On remand, the trial court was instructed that if the action was to continue as a class action, each class of plaintiffs had to be limited to those holding mortgages and personal bond agreements containing tax and insurance escrow provisions which *did not differ materially*. As to this limited group, two further requirements were to be met. First, the trial court must determine whether the group of mortgagors holding such instruments "are so numerous as to make it impracticable to join all as parties." Further, the trial court must be satisfied that the named plaintiffs seeking to represent the class "will adequately represent the interest of all."[3] Buchanan, 457 Pa. at 160, 320 A. 2d at 131.

Thus, the Supreme Court established three essential prerequisites for the proper maintenance of the class action: (1) Typicality; (2) numerosity;

---

3. Concerning the attempt to proceed against defendants individually and as representatives of a class of all similarly-situated banking institutions and savings and loan associations in Allegheny County, the Supreme Court ruled that the existence of independent contracts with substantially different provisions regarding the monthly escrow payments precluded a finding of a permissible defendant class under Rule 2230. Buchanan, supra, 457 Pa. at 160, 320 A.2d at 131.

and (3) adequacy of representation.[4] We will consider each prerequisite separately as applied to the facts of the case at hand.

## A. TYPICALITY

The Buchanan decision, 457 Pa. at 160, 320 A. 2d at 131, requires this court to limit the class of plaintiffs to those holding mortgage agreements containing tax and insurance escrow provisions which do not differ materially. Defendant contends that it has employed different types of mortgage and bond agreements in the conduct of its business, each having substantially different provisions than the type of escrow provision employed in plaintiffs' mortgage. Plaintiff contends that, despite the variations in language employed in these several types of agreements, the escrow provisions are basically the same and do not differ materially. A review of the documentary evidence of record supports plaintiffs' contentions, with five exceptions.

Plaintiff's mortgage agreement with defendant is attached to and made part of the complaint as Exhibit 1. The escrow provision reads as follows:

". . . And conditioned also upon the payment to Mortgagee, in addition to and concurrently with

---

4. Under revised F.R.C.P. 23(a), four prerequisites are listed: (1) The class must be "so numerous that joinder of all members is impracticable:" (2) there must be questions of law or fact common to the class; (3) the plaintiffs' claims must be typical of the class, and (4) plaintiffs must establish that they will "fairly and adequately protect the interests of the class." Notwithstanding any conceptual differences which might be imagined, for all practical purposes these appear identical to the three prerequisites listed by our Supreme Court in Buchanan, supra, 457 Pa. at 160, 320 A.2d at 131.

such monthly installments of principal and interest, a further sum equal to the total of one-twelfth of the annual taxes, water rent and other annual charges and assessments, if any, now assessed, or from time to time to be assessed by any municipal or other public authority, against the premises described in this Indenture of Mortgage, one-twelfth of any annual tax hereafter levied by any duly constituted authority upon Mortgagee on account or measured by the amount of, said Obligation, or this Indenture of Mortgage, or Mortgagee's revenue thereon, and one-twelfth of the annual cost of such insurance against fire and other hazard upon, against, or to said mortgaged premises as to Mortgagee shall seem necessary, all insurance to be procured through insurance companies approved by the Mortgagee."

At the deposition of Robert C. Houk,[5] president of defendant savings and loan association, plaintiff introduced 14 forms of mortgage agreements used by defendant during the past six years. The forms of agreements contained in deposition exhibits nos. 8 through 11 represent the forms used by defendant for non-F.H.A. and non-V.A. residential loans during the period from September 1968 through March 1975.[6] Deposition exhibits nos. 8 and 9 represent the forms of mortgage agreement employed by the defendant between September 1968 and September 1973 and are basically the same as plaintiffs' agreement.[7]

5. Deposition of Robert C. Houk, March 6, 1975, hereinafter cited as Houk deposition.

6. Approximately 65-70 percent of the residential mortgages handled by defendant are non-F.H.A. and non-V.A. residential mortgages. Houk deposition, p. 23.

7. Paragraph III of exhibit no. 8 reads as follows: "In addition to the payments above provided for, the undersigned

The escrow provisions found in deposition exhibits nos. 10 and 11 differ materially from those discussed above. The mortgage agreement contained in exhibit 10 was used by defendant from September 1973 until August 1974. During August 1974, it was replaced by the form agreement contained in exhibit 11 which is the mortgage agreement currently being used by defendant. Both contain identical escrow provisions which call for the monthly payment of one-twelfth the cost of insurance and taxes, but only at the lender's option. More important, however, are the clauses which specificially state that the lender shall make no charge for the service provided in making the tax and insurance payments, when due, and that the lender shall not be required to pay interest on the funds so held, unless a written agreement to that effect is entered into at the time the mortgage is executed.[8] Thus, it is apparent that the escrow

promises and agrees to deposit with the Payee or any subsequent holder in escrow monthly on the same dates as those provided in Part I, an amount equal to one-twelfth of the annual taxes plus, if required, the average monthly cost of insurance against fire and other hazards upon, against or to the mortgaged premises. *Undersigned further agrees to pay the cost of any Mortgage Insurance which may be required by Payee."* The escrow provision in deposition exhibit no. 9 does not contain the italicized final sentence quoted above. In all other aspects, the escrow provisions of deposition exhibits nos. 8 and 9 are identical.

8. The agreements contained in exhibits 10 and 11 contain identical escrow provisions, the relevant portions of which read as follows:

"2. *Funds for Taxes and Insurance:* Subject to Lender's option under paragraphs 4 and 5 hereof, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this

provisions contained in exhibits 10 and 11 raise sufficiently different questions of law and fact to justify excluding those persons holding such mortgage agreements from the class of plaintiffs in this action. This is not to say that those persons holding such agreements do not have a cause of action similar to that considered in this case or that a separate class action on their behalf may not be maintained. However, their claims would be atypical of the questions presented in this case and, under the Buchanan decision, supra, they cannot be included in this class of plaintiffs. Buchanan, supra, 320 A. 2d at 125; Oas v. Commonwealth, 8 Pa. Commonwealth Ct. 118, 126, 301 A. 2d 93, 97 (1973).

Deposition exhibit No. 12 contains the mortgage note and agreement employed by defendant in connection with V.A. mortgages. Despite the differences in language, the escrow provisions of this agreement are substantially similar to those found

Mortgage, and ground rents on the property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. *Lender shall make no charge for so holding and applying the Funds or verifying and compiling said assessments and bills. Borrower and Lender may agree in writing at the time of the execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made, Lender shall not be required to pay Borrower any interest on the Funds . . .*" (Emphasis supplied.)

in plaintiffs' agreement.[9] In addition, the agreement expressly refers to the escrow account as a trust.

Exhibit 13 represents the form agreement employed by defendant in connection with F.H.A. mortgages. The escrow provisions of this agreement are also substantially similar to plaintiffs'

---

9. "2. To more fully protect the security of this mortgage, the mortgagor shall pay to the mortgagee as trustee (under the terms of *this trust* as hereinafter stated) in addition to and concurrently with, each monthly installment of principal and interest until said Note is fully paid, the following sums:

"(a) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance, plus taxes, assessments, and sewer and water rents, next due on the premises covered by this mortgage (all as estimated by the mortgagee, and of which the mortgagor is notified) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes, assessments and sewer and water rents will become due, such sums to be held by mortgagee in *trust* to pay said ground rents, premiums, taxes, assessments and sewer and water rents.

"(b) The aggregate of the amounts payable pursuant to sub-paragraph (a) and those payable on this debt shall be paid in a single payment each month. . . ." (Emphasis supplied.)

Under paragraph 6 of this agreement, there appears to be an option under which the mortgagor may pay the premiums for hazard insurance or improvements to the property directly to the insurance companies rather than to the mortgagee's escrow account.

"6. Mortgagor will continually maintain hazard insurance, of such type or types and amounts as the Mortgagee may from time to time require, on the improvements now as hereafter on said premises, and except when payment for all such premiums has heretofore been made under (a) of paragraph 2 hereof will pay promptly when due and premiums therefor . . ."

From the face of the instrument, it is unclear as to which party may exercise this option. The existence of an option pro-

agreement.[10] The escrow provisions of this agreement also refers to the escrow account as a trust.

Exhibits 14 through 16 represent various forms of mortgage agreements used by defendant for commercial mortgages. The first form in exhibit 14 contains an escrow provision for ad valorem taxes and is substantially similar to plaintiffs'

vision, however, is not controlling in determining the typicality requirement. Even with a broader option provision, as will be found in subsequent agreements discussed in this opinion, the essential issue is whether the agreement provides for an escrow system of payment for taxes and insurance substantially similar to that contained in plaintiffs' agreement. If the agreement does so provide, even if it is optional, parties to these agreements may be properly joined as members of the class provided that they did, in fact, make payments for taxes and insurance under the escrow provision.

The distinguishing factor found in the escrow provisions in deposition exhibits nos. 10 and 11 was not the fact that the escrow payment system could be abandoned at the lender's option. Rather, the parties at least appeared to bargain away any rights to interest on the escrow funds. This raised substantially different questions of law and fact than those found in the other types of agreements discussed in this opinion.

10. "2. That in order more fully to protect the security of this Mortgage, the Mortgagor, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, covenants to pay to the Mortgagee, on the first day of each month until the said note is fully paid, the following sums: . . . .

"(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises secured hereby, plus taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one (1) month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, *taxes and special assessments.*" (Emphasis supplied.)

agreement.[11] The second form under exhibit 14, however, provides for the mortgagor to make all tax and insurance payments directly to the payee and provide proof of payment to the mortgagee. Since there is no escrow provision in this agreement, it cannot properly be included with those in the plaintiff class.

Exhibit 15 contains two other types of forms used by defendant for commercial mortgages. Both forms contain tax and insurance escrow provisions substantially similar to plaintiff's agreement.[12]

Exhibit 16 contains two more forms used by de-

11. "(1) . . . for payment to the political subdivisions in which the mortgaged premises securing this Note are located, the Undersigned will deposit or will cause the tenant of such premises to deposit monthly with First Federal in escrow an amount equal to one-twelfth ($^1/_{12}$) of the ad valorem taxes which would otherwise be payable if the mortgaged premises were not owned by it from which escrow payments will promptly be made to such political subdivisions. If the mortgaged premises become subject to ad valorem taxes the escrow shall be used for the payment thereof."

12. Paragraph III of the first form contained in exhibit 15 reads: "III. In addition to the payments above provided for, the undersigned promises and agrees to deposit with the payee or any subsequent holder in escrow monthly on the same dates as those provided in Part I, an amount equal to one-twelfth of the annual taxes plus, if required, the average monthly cost of insurance against fire and other hazards upon, against or to the mortgaged premises."

Paragraph 2 of the second form contained in Exhibit 15 reads: "That mortgagor shall also pay, in addition thereto, and concurrently with the monthly installments of principal and interest, if required by the mortgagee, a further sum equal to the total of one-twelfth of the annual taxes, water rent and other annual charges and assessments, if any, now assessed or from time to time to be assessed by any municipal or any other public authority, against the premises described in the Indenture of Mortgage, one-twelfth of any tax hereafter levied by any duly constituted authority upon Mortgagee or account

fendant for commercial mortgages. The escrow provision in the first form is identical to the escrow provision in the first form under exhibit 15. The second form contains an escrow provision identical to the escrow provision in the second form under exhibit 15. See footnote 12, supra. Both escrow provisions are substantially similar to that found in the plaintiff's agreement.

Exhibit 17 contains the mortgage form formerly used by defendant for Federal Home Loan mortgages. Exhibits 18 contains the mortgage form currently employed by defendant for Federal Home Loan mortgages. Both contain identical escrow provisions.[13] Like the escrow provisions in

of or measured by the amount of this mortgage or the Note accompanying said mortgage, or mortgagee's revenue hereon or thereon, and, at the option of the Mortgagee one-twelth of the annual cost of such insurance against fire and other hazard upon, against or to said mortgaged/ premises as to Mortgagee shall seem necessary, all insurance to be procured through insurance companies approved by the Mortgagee . . . ."

13. "2. *Funds for Taxes and Insurance.* Subject to Lender's Option under paragraphs 4 and 5 hereof, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof . . . . *Lender shall make no charges for so holding and applying the Funds or verifying and compiling said assessments and bills. Borrow and Lender may agree in writing at the time of the execution of this mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made, Lender shall not be required to pay borrower any interest on the Funds . . . .*" (Emphasis supplied.)

exhibits 10 and 11, the parties of this agreement at least appear to have bargained away any rights to interest on the escrow funds. As pointed out before, this constitutes a material difference and precludes the inclusion of the holders of this form of agreement in the plaintiff class.

Thus, the typicality requirement is met by those holding the aforementioned agreements, with the exception of exhibits 10, 11, 14 (second form), 17 and 18.

## B. NUMEROSITY

Rule 2230 requires that the class members be so numerous as to make joinder of parties impracticable. The evidence of record clearly demonstrates that the class of plaintiffs in this action are too numerous to join.

As of March 1975, defendant was the mortgagee on approximately 4,612 residential and commercial mortgages. This number has remained relatively constant over the past six years.[14] The vast majority of residential mortgages contain escrow provisions for taxes and insurance. Approximately 15 do not. Of these 15, some are second mortgages and the escrow provisions for taxes and insurance are included in the first mortgage.[15] Likewise, the vast majority of commercial mortgages also contain escrow provisions for taxes and insurance. The exceptions involve the relatively rare cases where the borrower owns properties in excess of the property he mortgages and there is no practical way to separate the taxes. These exceptional cases would number less than 50.[16] (See exhibit 14, sec-

---

14. Houk deposition, pp. 19-20, p. 26.

15. Houk deposition, p. 20.

16. Houk deposition, p. 26.

ond form.) Thus, the number of mortgage agreements containing escrow provisions is well over 4,500.

As shown above, some of the mortgage agreements employed by defendant differ substantially from plaintiff's agreement and will not be included in the class of plaintiffs in this particular action. However, the evidence to date indicates that these agreements constitute a relatively small percentage of the mortgage agreements held by defendant. Exhibits nos. 10 and 11 have only been employed since September 1973 and August 1974, respectively.[17] While exhibits nos. 17 and 18 appear to have been employed by defendant for quite some time, Federal Home Loan mortgages account for a relatively small percentage of defendant's residential mortgages.[18] Even if these agreements would constitute two-thirds of the number of mortgages held by defendant, the class of plaintiffs would still number over 1,500. Joinder of this number of parties would clearly be impracticable. In Garnet Valley School District v. Hanlon et al., 15 Pa. Commonwealth Ct. 476, 327 A. 2d 215 (1974), our Commonwealth Court upheld a class action where only 30 persons comprised the class and the identities of all persons in the class were either known or could easily be ascertained.

Rule 2230 does not require that the number of prospective plaintiffs comprising the class be shown with exactitude. All that is required is that the plaintiffs demonstrate that joinder is impracticable. See McMonagle v. Allstate Insurance Co., 227 Pa. Superior Ct. 205, 224, 324 A. 2d 414, 424 (1974) (Hoffman, J., dissenting), affirmed 458 Pa.

17. Houk deposition, pp. 22-23.
18. Houk deposition, p. 23.

317, 331 A. 2d 467 (1975). The Federal courts have adopted a similar standard pursuant to F.R.C.P. 23: Kohn v. Royall, Koegel & Wells, 59 F.R.D. 515, 521 (S.D.N.Y., 1973); Taber v. Charnita, Inc., 58 F.R.D. 74, 79 (M.D. Pa., 1973); 7 Wright & Miller, Federal Practice and Procedure, section 1762 (1972).

### C. ADEQUACY OF REPRESENTATION

Rule 2230 expressly requires that the class representatives must adequately represent the interest of the class: Buchanan, supra, 320 A. 2d at 131. A similar provision is found in F.R.C.P. 23 (a) (4) (See footnote 4, supra). Essentially, this requires that the interests of plaintiffs not conflict with the interests of the class they seek to represent: Oas v. Commonwealth, 8 Pa. Commonwealth Ct. 118, 301 A. 2d 93 (1973). See also Williams v. Local No. 19, 59 F.R.D. 49, 55 (E.D. Pa., 1973); Mersay v. First Republic Corporation, 43 F.R.D. 465 (S.D.N.Y., 1968); 7 Wright & Miller, Federal Practice and Procedure, sections 1765 through 1769 (1972); 2 Barron & Holtzoff, Federal Practice and Procedure, section 567 (1961).

The only serious argument defendant raises in this context concerns paragraph (d) of the complaint's prayer for relief. Paragraph (d) prays that this court:

"Permanently enjoin Defendant from collecting any monies from plaintiffs or other class members to be used as trust or escrow funds for the purpose of paying real estate taxes and for insurance premiums on behalf of Plaintiffs and other members of the class."

Defendant correctly points out the monthly payment of taxes and insurance premiums is ben-

eficial to a great many mortgagors. As our Supreme Court noted in Buchanan, supra, a great many foreclosures occurred during the "Great Depression" as a result of the mortgagors' inability to pay annual tax assessments. As a result of this, banks began to require the monthly tax payments into an escrow account on the theory that the individual homeowner would find it easier to make payments of one twelfth the annual taxes than to meet the annual tax bill in a single payment: Buchanan, supra, 320 A. 2d at 121.

We agree with defendant on this point and will require an amendment to the complaint before allowing this case to go forward as a class action. While there is no serious argument that an accounting for the escrow payments and a crediting of interest to the accounts of the class members would be beneficial to all, the injunctive relief requested in paragraph (d) would appear inimical to the interests of at least some of the class members: Luitweiler v. Northchester Corp., 456 Pa. 530, 319 A. 2d (1974); Penn Galvanizing Co. v. Philadelphia, 388 Pa. 370, 130 A. 2d 511 (1957); Oas v. Commonwealth, supra. In all other respects, plaintiffs' interests appear coextensive with the interests of the class members.

## D. DE MINIMIS

Defendant's final objection to the class action is that the net return to the putative class members, after expenses and attorney's fees, would be so small that this court should dismiss the action under the maxim "de minimis non curat lex" (the law does not concern itself with trifles). However, this argument overlooks the fact that a common element in most class actions is the existence of a

claim too small to warrant action by the individual members. Individual remedies in such cases would be illusory and the costs involved to the individual plaintiffs would often prevent the claimants from obtaining relief. It is only by joining these small claims together that such parties can obtain redress for collective wrongs which, viewed separately, may appear trivial. The class action is an offspring of the courts of equity—"the Conscience of the King"—and, like its ancestor, molds its relief to fit the requirements of the case: Union Pacific Railway Co. v. Chicago, Rock Island & Pacific Railway Co., 163 U.S. 564, 601, 16 S. Ct. 1173, 41 L. Ed. 265, 278 (1896) (Fuller, C. J.); Buchanan, supra, 457 Pa. at 151, fn. 17, 320 A. 2d at 126, fn. 17; Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 146, 182 Atl. 376, 379-380 (1936); Kronisch v. Howard Savings Institution, 133 N. J. Super. 124. 335 A. 2d 587 (1975); 7 A. Wright and Miller, Federal Practice and Procedure, section 1782, pp. 101-02 (1972); 1 Pomeroy, A Treatise on Equity Jurisprudence, section 111, pp. 143-44 (5th Ed., 1941).

## II. PETITION FOR JOINDER OF NECESSARY PARTIES

This group of preliminary objections essentially deals with what type of notice should be given to the individual members of the class and what effect a final judgment in this case will have on the individual class members. This will be considered in a separate opinion.

## III. DEMURRER

Defendant's third set of preliminary objections is in the nature of a demurrer. A demurrer admits as

true all well-pleaded facts and all inferences reasonably deducible from them, but not any conclusions of law. A demurrer will be sustained only, if upon the facts averred, the law says with certainty that no recovery is permitted: Buchanan, supra; Reardon v. Wilbur, 441 Pa. 551, 554, 272 A. 2d 888, 890 (1971); Clevenstein v. Rizzuto, 439 Pa. 397, 400-01, 266 A. 2d 623, 624-25 (1970).

Defendants argue that the facts averred in the complaint are not sufficient in law or equity to create a trust relationship. In the Buchanan decision, supra, our Supreme Court expressly ruled that these factual allegations were sufficient to withstand a demurrer: Buchanan, supra, 457 Pa. at 150, 320 A. 2d at 123, 126.

The court found that under Pennsylvania decisional law, no particular form of words is necessary to create a trust. In determining whether there is a trust, the courts must look at the powers and duties conferred and not at the title or form of words used. "Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee." Vosburgh's Estate, 279 Pa. 329, 332, 123 Atl. 813, 815 (1924). See also McClain Estate, 435 Pa. 408, 411, 257 A. 2d 245, 246-47 (1969); Thompson Will, 416 Pa. 249, 254-55, 206 A. 2d 21, 25 (1965); Provident Trust Co. v. Lukens Steel Co., 359 Pa. 1, 58 A. 2d 23 (1948); Restatement 2d, Trusts, §§2 and 24 (1959); 1 Scott on Trusts, §24 (3rd Ed., 1967). Further, even if an express trust was not created, plaintiff's allegations sufficiently put in question the issue of a constructive trust: Buchanan, supra, 320 A. 2d at 126-27. See also Truver v. Kennedy, 425 Pa. 294, 305, 229 A. 2d 468, 474 (1967);

Chambers v. Chambers, 406 Pa. 50, 54-5, 176 A. 2d 673, 675 (1962); Restatement 2d, Trusts, §1, Comment e (1959); 5 Scott on Trusts, §§462 and 462.1 (3rd. Ed., 1967).

The foregoing authorities make it clear that to introduce the issue of a constructive trust, a plaintiff need only allege that the putative trustee has legal title to the property in question and that should he retain it, he would be unjustly enriched. Since the factual averments place both the issue of an express and constructive trust in issue, plaintiffs must be given an opportunity to present their proof at trial: Buchanan, supra, 320 A. 2d at 123, 126.

In support of its position, defendant cites a number of cases from other jurisdictions. Sears v. First Federal Savings and Loan Association of Chicago, 1 Ill. App. 3d 621, 275 N.E. 2d 300 (1971), was resolved on the Illinois appellate court's construction of the language found in the mortgage note at issue in that case. That mortgage agreement permitted the mortgagee to choose, from three options, how the monthly payments would be held. Construing the language of the option chosen, the Illinois Court found that this did not create a trust but was, instead, a series of payments made by a debtor to a creditor: Sears v. First Federal Savings and Loan Association, supra, 275 N.E. 2d at 304-05. The language found in the Sears agreement is substantially different from the language found in the agreements discussed above. See also Buchanan, supra, 320 A.2d at 123-24, fn. 11 where our Supreme Court distinguished the Sears case. Durkee v. Franklin Savings Association, 17 Ill. App. 3d 978, 309 N.E. 2d 118 (1974), involved a mortgage agreement sub-

stantially similar to that found in the Sears case, supra. In Gibson v. First Federal Savings and Loan Association of Detroit, 504 F.2d 826 (6th Cir., 1974), the court did not reach the issue of whether the escrow accounts constituted an express or constructive trust. Rather, the court affirmed the lower court's dismissal of that part of the complaint which alleged a violation of Federal regulations. The court also affirmed the lower court's refusal to exercise pendent jurisdiction over the trust issue in the absence of a substantial Federal question. Likewise, Yudkin v. Avery Federal Savings and Loan Association, 507 S.W.2d 689 (Ky., 1974), did not consider the trust issue. The pleadings in Yudkin did not allege that defendant was using the escrow funds for its own profit or that defendant was thereby unjustly enriched. The only issue considered was whether defendant was obliged to pay interest on the escrow accounts on an implied contract theory. The court ruled only that there was, in that case, no implied contract for the payment of interest on the escrow accounts.

Zelickman v. Bell Federal Savings and Loan Association, 13 Ill. App. 3d 631, 301 N.E. 2d 47 (1973), involved an agreement similar in many respects to those being considered in this case. In Zelickman, the Illinois appellate court construed the language in the mortgage agreement as not constituting either an express or constructive trust: Zelickman, supra., 309 N.E. 2d at 52-3. However, the Zelickman opinion made it clear that the Illinois courts were applying a much narrower construction to the terms "express trust" and "constructive trust." Compare Zelickman, supra, 301 N.E. 2d at 51-3 with Buchanan, supra, 320 A. 2d at 122-23, 126-27. Under the Buchanan

decision, plaintiffs have alleged facts sufficient to withstand a demurrer. A number of other jurisdictions have also taken similar positions: McNary v. American Savings and Loan Association, —F.Supp. —, (No. CA3-74-459 B, N.D. Texas, July 9, 1975); Millberg v. Lawrence Cedarhurst Federal Savings and Loan Association. —F.Supp. —, (No. 71 C 392, E.D.N.Y., May 20, 1975); Sommers v. Abraham Lincoln Federal Savings and Loan Association, 66 F.R.D. 581 (1975); Lollar v. L. E. Lay & Co., Inc., — F.Supp. —, (No. P-73-C A-4, E.D. Texas, March 5, 1974); Kronisch v. Howard Savings Institution, 133 N.J. Super. 124, 335 A. 2d 587 (Chanc., 1975). See also Piltzner v. Independence Federal Savings and Loan Association, October Term, 1971, No. 3756 (Philadelphia C.P., January 12, 1973), appeal quashed 456 Pa. 402, 319 A. 2d 677 (1974).

## IV. JURISDICTION

Defendant's remaining preliminary objections challenge this court's jurisdiction on two grounds: first, defendants maintain that since the maintenance of escrow accounts is permitted under Federal laws and regulations, this court lacks jurisdiction to enjoin the maintenance of the escrow accounts; and secondly, defendants contend that the plaintiffs have a full and adequate remedy at law.

We need not consider the merits of defendant's initial argument. We have already ruled that Paragraph (d) of the Complaint's prayer for relief, which requests that defendant be enjoined from maintaining the escrow accounts, is inimical to the interests of the class and must be amended before the action may proceed.

The second objection, that defendants have an

adequate remedy at law, is clearly without merit. It is well established that equity has jurisdiction to prevent a multiplicity of law suits. Luitweiler v. Northchester Corporation, 456 Pa. 530, 319 A.2d 899 (1974); Schrader v. Heath, 408 Pa. 79, 182 A.2d 696 (1962); Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306, 125 A.2d 755 (1956); Schwartz v. Laundry and Linen Supply Drivers Union, Local 187, 339 Pa. 353, 14 A.2d 438 (1940); 8 Standard Pennsylvania Practice, Section 188 p. 211 (Rev. Ed. 1961).

## ORDER

Now, September 15, 1975, it is hereby ordered, adjudged and decreed that, in accordance with the opinion filed herewith:

1. Defendant's preliminary objection number 1 is sustained insofar as plaintiffs must amend or delete subparagraph (d) of the complaint's prayer for relief.

2. Defendant's preliminary objections numbers 2 and 3 are sustained insofar as they relate to deposition exhibits 10, 11, 14 (second form), 17 and 18. In all other respects, defendant's preliminary objections numbers 2 and 3 are overruled.

3. Defendant's preliminary objection number 4 is overruled.

4. Defendant's preliminary objection number 5 will be considered in a subsequent opinion and order of court.

5. Defendant's preliminary objections 6, 7 and 8 are overruled.

6. Defendant's preliminary objection number 9 is overruled as being not responsive to the complaint.

7. Defendant's preliminary objection number

10 is sustained insofar as plaintiff must amend or delete subparagraph (d) of the complaint's prayer for relief.

8. Defendant's preliminary objection number 11 is overruled.